UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IZTOK VODOPIVEC,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY'S LLC, ZVI GUITMAN, MARC GUITMAN, and ROBERT GELLER,<br><br>Defendants. | No. 2:17-cv-13579-KM-JBC<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Iztok Vodopivec sues his former employers, Anthony's LLC, Zvi Guitman, Marc Guitman, and Robert Geller. He claims the defendants harassed him on the basis of his Slovenian ethnicity and also engaged in a stamp-forgery scheme. Now before the court is defendants' motion to dismiss. Defendants argue that plaintiff's 42 U.S.C. § 1981 action fails to state a claim and therefore this court lacks subject matter jurisdiction over plaintiff's two state-law claims. For the reasons stated below, defendants' motion to dismiss is denied.

### I. BACKGROUND[1]

Plaintiff Iztok Vodopivec is a resident of New Jersey and a former employee of defendant Anthony's LLC, a coin and stamp collecting business based in Englewood Cliffs, New Jersey. (Compl. ¶¶ 3-4, 8, 20). Defendants Zvi Guitman (a/k/a Howard), Marc Guitman, and Robert Geller are all members of

---

[1] All facts and inferences are construed in favor of the nonmoving party on a motion to dismiss. Citations to the complaint (ECF No. 1) are abbreviated "Compl."

1

Anthony's LLC and residents of New Jersey. (Compl. ¶¶ 4-7). Iztok Vodopivec, who was born in Slovenia, alleges defendants forced him to "act Jewish" and change his name, harassed him because of his Slovenian background, and terminated him when he disagreed with fraudulent business practices and insisted on using his actual name of Iztok. (Compl. ¶ 8).

### A. Ethnic Stereotyping Allegations

Anthony's LLC hired Iztok Vodopivec around September 2009 to perform clerical work. (Compl. ¶¶ 10, 20, 24). Zvi Guitman immediately demanded Iztok Vodopivec "act Jewish" and use the name "Isaac" when interacting with customers. (Compl. ¶¶ 20-25, 29). Zvi Guitman told Iztok Vodopivec that he must "act Jewish" or he would be discharged. (Compl. ¶ 26). Zvi allegedly stated that individuals respected Jewish people as knowledgeable collectors, that Slovenians were "low life," and that Slovenians were not respected in this business. (Compl. ¶¶ 26, 28). He also allegedly stated that Jewish people were "discriminated [against] for so long [so] we now rip everyone off." (Compl. ¶ 26). Robert Geller and Marc Guitman would laugh and reaffirm that Iztok Vodopivec needed to present himself as "more Jewish." (Compl. ¶ 28). Defendants told Iztok Vodopivec he was employed by Anthony's LLC only because he was married to Zvi Guitman's daughter-in-law. (Compl. ¶ 28).

### B. Immigration and Tax Fraud Allegations

Iztok Vodopivec claims that Anthony's LLC did not comply with immigration and tax laws. Anthony's LLC did not initially request Iztok Vodopivec's I-9 application. (Vodopivec states that he is a permanent resident and is entitled to employment authorization.) (Compl. ¶¶ 25, 32, 34). Anthony's LLC allegedly had several employees who did not submit I-9 applications. (Compl. ¶ 32). Robert Geller threatened Iztok Vodopivec, saying that Anthony's LLC paid his immigration bond and could take it away. (Compl. ¶ 19). Additionally, Zvi Guitman would give Iztok Vodopivec cash raises to avoid paying additional taxes. (Compl. ¶ 25).

### C. Fraudulent Business Allegations

The defendants allegedly forged and altered stamps to make them appear unique and then sell them for thousands of dollars. (Compl. ¶ 12). Defendants routinely sold "worthless" stamps for hundreds or thousands of dollars. (Compl. ¶ 13). For example, Iztok Vodopivec alleges that in August 2017, Robert Geller trimmed the perforation of a stamp, sanded the stamp with a nail file, and put glue on the side to make the stamp appear to be a vintage item. (Compl. ¶ 13).

Around August 2017, Iztok Vodopivec told Zvi Guitman and Robert Geller that they should not engage in stamp forgery. (Compl. ¶ 15). They told Iztok Vodopivec to "keep his mouth shut" because this was how they ran their business. (Compl. ¶ 15). In September 2017, Iztok Vodopivec saw Robert Geller deplete a stamp of its color by applying gum, taking the gum off one stamp, and transferring it onto an old stamp. (Compl. ¶ 14).

At this time, a web-based discussion of collectors was created to discuss alleged forgeries by Anthony's LLC. (Compl. ¶ 16). Iztok Vodopivec was concerned and advised Zvi Guitman and Robert Geller that there were serious allegations against the business. (Compl. ¶ 16). One allegation was that defendants would purchase coins from unsophisticated customers for less than their value, exchange the coins for cash, and then split the sums between the individual defendants rather than deposit it in Anthony's LLC. (Compl. ¶ 36).

Iztok Vodopivec warned Zvi Guitman that Marc Guitman, Zvi Guitman's son, was presenting items on eBay as one-of-a-kind items even though these items were duplicates. (Compl. ¶ 17). Iztok Vodopivec claims that defendants defrauded customers of millions of dollars. (Compl. ¶ 18). In November 2017, Iztok Vodopivec told Robert Geller again that the stamp forgery must end and that they could be subject to criminal prosecution. (Compl. ¶ 18). Robert Geller, apparently speaking for Zvi Guitman and Marc Guitman as well, told Iztok Vodopivec to keep the stamp forgery a secret if he wanted to keep his job.

(Compl. ¶¶ 19-20). Robert Geller told Iztok Vodopivec that Anthony's LLC paid for his immigration bond and could revoke it. (Compl. ¶ 19).

Iztok Vodopivec feared losing his job because he needed medical insurance for his wife, who has a disability, and his two young daughters. (Compl. ¶ 30). Iztok Vodopivec alleges that defendants harassed him and discriminated against him so he would not report their forgery business. (Compl. ¶ 31).

### D. Termination

In October 2017, Iztok Vodopivec told Zvi Guitman that he would no longer go by the name "Isaac." (Compl. ¶ 37). Zvi Guitman told Iztok Vodopivec that this was unacceptable and that Iztok Vodopivec had to "fix Mr. Guitman's marriage." (Compl. ¶ 39).

In November 2017, Iztok Vodopivec told defendants he would not be intimidated by their threats and discriminatory statements. (Compl. ¶ 32). At this time, defendants asked Iztok Vodopivec to produce an I-9 form, which they had never previously required. (Compl. ¶ 32). Defendants also told Iztok Vodopivec to stay home until further notice. (Compl. ¶ 32).

Iztok Vodopivec remained out of work while he prepared his I-9 form. (Compl. ¶ 40). Defendants then terminated Iztok Vodopivec, stating that he had not submitted his I-9 form. (Compl. ¶ 40).

### E. Initiating this Lawsuit

Iztok Vodopivec filed a complaint in this court on December 23, 2017. (ECF No. 1). He asserts three claims:

- **Count One:** Violation of civil rights under 42 U.S.C. § 1981 (Compl. ¶¶ 42-52);
- **Count Two:** Violation of the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-4 ("NJLAD") (Compl. ¶¶ 53-54);
- **Count Three:** Violation of the New Jersey Conscientious Employee Protection Act, N.J. Stat. Ann. § 34:19-1 ("CEPA") (Compl. ¶¶ 55-58).

Iztok Vodopivec seeks compensatory damages and punitive damages in excess of $300,000. Defendants filed a motion to dismiss on February 15, 2018. (ECF No. 4). Iztok Vodopivec opposes this motion.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

The United States Court of Appeals for the Third Circuit has explicated the *Twombly/Iqbal* standard on several occasions. *See, e.g., Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70-73 (3d Cir. 2011);

5

*Santiago v. Warminster Twp.*, 629 F.3d 121, 129-30 (3d Cir. 2010). In doing so, it has provided a three-step process for evaluating a Rule 12(b)(6) motion:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See* [*Iqbal*, 556 U.S.] at 675; *Argueta*, 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also In re Asbestos Prods. Liability Litig. (No. VI)*, 822 F.3d 125, 134 & n.7 (3d Cir. 2016); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.").

### III. DISCUSSION

In keeping with the principles stated above, for purposes of this motion to dismiss, the allegations of the Complaint are taken as true. They have not, of course, been tested by any finder of fact.

#### A. 42 U.S.C. § 1981 Claim

Congress passed 42 U.S.C. § 1981 as part of the Civil Rights Act of 1866 to enforce the rights guaranteed by the Thirteenth Amendment. *See St. Francis*

6

*College v. Al-Khazraji*, 481 U.S. 604, 612 (1987); *Runyon v. McCrary*, 427 U.S. 160, 195 n.6 (1976). It provides, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. While the statute does not include the word "race," the Supreme Court construes this section to forbid racial discrimination in the making of private and public contracts. *St. Francis College*, 481 U.S. at 609. The right to contract protected by the statute includes protection from racial discrimination in employment contracts. *See Walker v. Abbott Labs.*, 340 F.3d 471, 476 (7th Cir. 2003); *Estate of Oliva v. New Jersey*, 579 F. Supp. 2d 643, 664-65 (D.N.J. 2008).

Courts have interpreted "race" for purposes of section 1981 to include "ancestry or ethnic characteristics" but not to include "nation of ... origin." *St. Francis College*, 481 U.S. at 613. In *St. Francis*, the Supreme Court noted that the understanding of "race" in section 1981 includes groups "who might be deemed Caucasian today," such as Swedes, Norwegians, Germans, Greeks, Finns, Italians, Russians, Arabs, Hungarians, etc. *Id.* at 611; *see also Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617-18 (1987) (holding that Jews are "considered to be [a] distinct race[ ] and hence within the protection of the statute," and thus "Jews are not foreclosed from stating a cause of action against other members of what today is considered to be part of the Caucasian race"). The Court explained:

> [Section] 1981, "at a minimum," reaches "discrimination against an individual "because he or she is genetically part of an ethnically and physiognomically distinctive sub-grouping of *homo sapiens.*" It is clear from our holding, however, that a distinctive physiognomy is not essential to qualify for § 1981 protection. If respondent on remand can prove that he was subjected to intentional

7

> discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981.

*St. Francis College*, 481 U.S. at 613.[2] Justice Brennan, concurring in *St. Francis College*, claimed that the majority found all types of racial and ethnic discrimination cognizable under section 1981 except those based on "*birthplace alone.*" *Id.* at 614. (The distinction may appear odd because cases brought under Title VII often analyze national-origin and ancestry-based claims together. *See Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 89 (1973)).

Many courts have thus agreed that *pure* national-origin discrimination claims are not cognizable under section 1981. *See, e.g., El-Zabet v. Nissan N. Am., Inc.*, 211 F. App'x 460, 462-63 (6th Cir. 2006) ("[I]t is legally impossible to state a claim for national-origin discrimination under section 1981."); *Fonseca v. Sysco Food Serv.*, 374 F.3d 840, 850 (9th Cir. 2004) (finding that "national origin discrimination is not within the ambit of § 1981"). The Third Circuit also suggests that a claim based "solely on [one's] national origin" would not satisfy the requirements of section 1981." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 172 (3d Cir. 1991).

To state a claim, then, plaintiffs must specifically aleged discrimination based on ancestry or ethnicity, rather than just national origin. For instance, in *Powell v. Independence Blue Cross*, the Eastern District of Pennsylvania found that, for purposes of section 1981, discrimination based on Jewish ancestry (as opposed to adherence to the tenets of the Jewish faith) is cognizable. *Powell v. Indep. Blue Cross, Inc.*, No. 95-cv-2509, 1997 WL 137198, at *7 (E.D. Pa. Mar. 26, 1997). In *Gamas v. Anheuser-Busch, Inc.*, the District of New Hampshire found that Greek national origin is not protected under section

---

[2]   Courts have noted that plaintiffs also can bring a section 1981 claim because of their efforts to protect racial minorities or ethnic groups. "A white person who is injured as a result of his or her efforts to defend the rights of non-whites has standing to sue under § 1981." *Alder v. Columbia Historical Soc.*, 690 F. Supp. 9, 15 (D.D.C. 1988); *see also Schultz v. Wilson*, 304 F. App'x 116, 119 (3d Cir. 2008).

8

1981—but Greek ancestry is protected. No. 3-cv-89, 2005 WL 419690, at *1 (D.N.H. Feb. 23, 2005).[3]

Thus, the viability of Iztok Vodopivec's section 1981 claim depends on whether he alleges ethnicity and ancestry discrimination or mere national-origin discrimination. *See Wesley v. Palace Rehab. & Care Ctr., L.L.C.*, 3 F. Supp. 3d 221, 228-30 (D.N.J. 2014). Iztok Vodopivec states that Zvi Guitman "was constantly reminding him that he needs to act Jewish because being from Slovenia is not acceptable in the coin and stamps business." (Compl. ¶ 20). He was told that he needed to "comport himself like a Jewish person or else he could be discharged." (Compl. ¶ 26). Zvi Guitman told him "his Slovenian character was low life" and the other defendants laughed at these comments. (Compl. ¶ 28). Defendants forced him to go by "Isaac" so customers would think he was Jewish; they did not permit him to go by his Slovene name, Iztok. (Compl. ¶¶ 22-23). Defendants fired Iztok Vodopivec shortly after he told them he must be called "Iztok," not "Isaac." (Compl. ¶¶ 37-41).

These allegations, while far from thorough and detailed, suggest that defendants discriminated against Iztok Vodopivec based on his Slovene ancestry and ethnicity—and not merely upon his having been born in Slovenia. Defendants refused to acknowledge his Slovene name, forced him to use a name of a different ethnic group, and also demanded that he "comport himself" as if he was a member of another ethnicity. This, at the motion to dismiss stage, establishes a prima facie case under section 1981.

### B. NJLAD Claim

"The NJLAD prohibits unlawful discrimination against an individual with respect to terms and conditions of employment because of various traits and

---

[3]  Defendants point to *Budinsky v. Corning Glass Works.*, where the Western District of Pennsylvania found that Slavic identity is not a protected race within the ambit of section 1981. 425 F. Supp. 786, 787-89 (W.D. Pa. 1977). *Budinsky*'s holding and logic have been refuted by the Supreme Court's decision in *St. Francis College v. Al-Khazraji*, 481 U.S. 604 (1987), and therefore I do not rely on it.

9

characteristics, including, but not limited to, race, religion, age, sex and disability." *Davis v. Supervalu, Inc.*, 13-cv-414, 2013 WL 1704295, at *4 (D.N.J. Apr. 19, 2013) (citing N.J.S.A. § 10:5–12(a)). To establish a prima facie case of discriminatory termination under NJLAD, a plaintiff must adequately plead that (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination. *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999)).

Iztok Vodopivec's complaint alleges the following: (1) He is Slovene and is being discriminated against on the basis of this ethnicity. (2) He appears qualified to perform clerical services, and defendants do not contest this for purposes of this motion. (3) He was terminated. (4) His termination followed his objection to defendants' demands that he "act Jewish" and use the name "Isaac." Those allegations adequately set forth an NJLAD claim.

### C. CEPA Claim

CEPA is a whistleblower statute that protects workers who object to or refuse to participate in activities they believe are in violation of a law, rule, regulation promulgated pursuant to law, or a clear mandate of public policy. N.J. Stat. Ann. § 34:19-3; *see Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003). The goal of CEPA is to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." *Abbamont v. Piscataway Twp. Bd. of Educ.*, 650 A.2d 958, 971 (N.J. 1994).

A CEPA claim has four essential elements: (1) the employee reasonably believed the complained-of conduct was violating either a law, rule, regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he performed a whistleblowing activity; (3) an adverse employment action was taken; and (4) the adverse employment action occurred because of his

whistleblowing activity. *Clayton v. City of Atl. City*, 722 F. Supp. 2d 581, 588-89 (D.N.J. 2010) (citing *Dzwonar*, 828 A.2d at 900).

Iztok Vodopivec has set forth sufficient allegations to maintain a CEPA claim. (1) He reasonably believed that the complained-of conduct was illegal. Forgery of a stamp is a crime under New Jersey law, N.J. Stat. Ann. § 2C:21-1, and Iztok Vodopivec had reason to believe that defendants were engaging in forgery. (2) He objected to defendants' alleged stamp-forgery activities and repeatedly told them to stop. This is a "whistleblowing activity" as defined by N.J. Stat. Ann. § 34:19-3c. *See Smith v. TA Operating, LLC*, No. 10-cv-2563, 2012 WL 3527696, at *9 (D.N.J. Aug. 13, 2012) ("[A]ll that CEPA requires is that plaintiff 'object to' [a defendant's] conduct."). (3) Iztok Vodopivec was terminated and it appears that (4) he was terminated, *inter alia*, for objecting to the defendants' alleged stamp forgery. The motion to dismiss is denied as to Count Three.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied. An appropriate order accompanies this opinion.

Dated: August 1, 2018

**KEVIN MCNULTY**
**United States District Judge**

11